UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
UNITED STATES OF AMERICA,

Plaintiff,

08 CV 3046 (SJ) (JMA)

-against-

**MEMORANDUM & ORDER**

LOCAL 14-14B OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL-CIO,

Defendant.
---------------------------------------------------X

A P P E A R A N C E S

LORETTA E. LYNCH, ESQ.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
By: Richard K. Hayes
Assistant United States Attorney

BRADY MCGUIRE & STEINBERG, LLP
603 Warburton Avenue
P.O. Box 176
Hastings-on-Hudson, NY 10706
By: James Michael Steinberg
Attorneys for Defendant International Union of Operating Engineers Local 14-14B

PETER THOMAS SHERIDAN
603 Warburton Avenue
Hastings on Hudson, NY 10706
By: Peter Thomas Sheridan
Attorneys for Defendant International Union of Operating Engineers Local 14-14B

BAKER & HOSTETLER LLP
45 Rockefeller Plaza



P-049

New York, NY 10111
By: George A. Stamboulidis
Court-Appointed Ethical Practices Attorney of International Union of Operating Engineers Local 14-14B

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
By: Lauren J. Resnick
Attorneys for Interested Party George A. Stamboulidis, Ethical Practices Attorney of International Union of Operating Engineers Local 14-14B

LAW OFFICES OF FREDERICK K. BREWINGTON
556 Peninsula Boulevard
Hempstead, NY 11550
By: Frederick K. Brewington and Gregory Calliste, Jr.
Attorneys for Interested Parties James Mascarella, William Duffy, and Gene Panessa

LA REDDOLA, LESTER & ASSOCIATES, LLP
600 Old Country Road, Suite 224
Garden City, NY 11530
By: Robert James La Reddola
Attorneys for Interested Parties James Mascarella, William Duffy, and Gene Panessa

TRIVELLA, FORTE & SMITH, LLP
1311 Mamaroneck Avenue
White Plains, NY 10605
By: Seth Ptasiewicz
Attorneys for Interested Parties Lawrence Persico and Anthony Carollo, Jr.

CULLETON, MARINACCIO & FOGLIA
245 Main Street, Suite 410
White Plains, NY 10601
By: Michael Anthony Marinaccio
Attorneys for Interested Party Stephen Santucci

VINCENT J. MARTINELLI, ATTORNEY AT LAW
2040 Victory Blvd.
Staten Island, NY 10314
By: Vincent J. Martinelli
Attorneys for Interested Party Richard J. Troy



P-049

MURRAY & MCCANN
100 Merrick Road
Suite 514 West
Rockville Centre, NY 11570
By: Francis John Murray
Attorneys for Interested Party Steven Skinner

LAW OFFICE OF SETH GINSBERG
225 Broadway
Suite 715
New York, NY 10007
By: Clara Sophia Kalhous
Attorneys for Interested Parties Anthony Licata and William Scotto

LAW OFFICE OF PETER J. TOMAO
226 Seventh Street
Suite 302
Garden City, NY 11530
By: Peter J. Tomao
Attorneys for Interested Party Francis X. Gray

LAW OFFICES OF JOSEPH V. SORRENTINO, ESQ.
404 Manor Road
Staten Island, NY 10314
By: Joseph V. Sorrentino
Attorneys for Interested Party Nicholas Lupari

JOHNSON, Senior District Judge:

Presently before the Court is a motion to enforce a consent decree and judgment ("Consent Decree"). After considering the parties' briefs and oral argument, the motion is GRANTED.

## BACKGROUND

Between 2003 and 2005, several members and officers of Defendant Local 14-14B ("Local 14" or "the Union") of the International Union of Operating



P-049

Engineers ("IUOE") were indicted on criminal charges pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. ("RICO") in the Eastern and Southern Districts of New York. As a result, twenty-nine officers, representatives, and members of Local 14 pleaded guilty to various crimes including labor racketeering, extortion, mail fraud, embezzlement, and conspiracy. Following the indictments, Local 14 took steps internally to combat corruption, including amendments to the Union's by-laws and a new Ethical Practices Code.

In July 2008, the Government proceeded with this civil RICO action pursuant to 18 U.S.C. § 1964 to further combat corruption and organized crime influence in the Union's operations. (See Compl. ¶¶ 1–3). To settle the action, the Union and the Government entered into the Consent Decree on July 25, 2008. (See Docket No. 4.) The Decree had been approved by the Government and the Local 14 Executive Board, whose approval was ratified by the Union membership on June 12, 2008. (See Declaration of George A. Stamboulidis In Further Support of the Petition for Enforcement ("Stamboulidis Decl."), Ex. 1.) The Court entered the Consent Decree as Order and Judgment on August 11, 2008.

The Consent Decree states that its purpose is to "eradicate corruption . . . and any organized crime influence within Local 14 while preserving the Local's strength and autonomy . . . ." (Consent Decree at 2.) Accordingly, relevant to the pending motions, the Consent Decree enjoins Local 14 and all of its current and future officers, agents, representatives, employees, and members from engaging in acts of corruption. (See Consent Decree § III.) The Consent Decree defines

"corruption" as: (1) engaging in conduct which constitutes or furthers acts of racketeering; (2) knowingly associating with any member or associate of organized crime; (3) obstructing the implementation of any relief imposed in this case; (4) knowingly assisting members or associates of organized criminal groups to gain control or influence over Local 14's affairs; (5) violating federal or state law involving the operation of a labor organization or an employee welfare or pension benefit plan; or (6) any action or inaction which furthers the influence of any organized criminal group. (See Consent Decree § II.C.)

The Consent Decree orders the appointment of an Ethical Practices Attorney (the "EPA") to, inter alia, investigate corruption concerning Local 14[1] and institute disciplinary proceedings against Union leaders and members who engaged in corrupt practices. (See Consent Decree § IV.B.) The Consent Decree also authorizes a Hearing Officer to preside over any disciplinary hearings and to

[1] "Corruption concerning Local 14" is "Corruption," as defined in the Consent Decree:

> (1) in which any officer, member or employee of the IUOE or any IUOE Local engages or participates involving all matters within the craft jurisdiction, governance, operation and/or administration of Local 14, including as provided for under the IUOE Constitution, Local 14 By-Laws, and Local 14 Charter; or
>
> (2) in which any officer member or employee of the IUOE or any IUOE Local engages or participates with any officer, member or employee of Local 14; or
>
> (3) engaged in by any Local 14 officer, member, or employee regardless of whether the Corruption otherwise involves any matter within the craft jurisdiction, governance, operation and/or administration of Local 14, including and as provided for under the IUOE Constitution, Local 14 By-Laws, and Local 14 Charter; and
>
> which may take place outside Local 14's geographic or territorial jurisdiction.

(Consent Decree § II.D.)

suspend from Union membership any officer or member who the Hearing Officer has determined engaged in corruption concerning Local 14. (See Consent Decree § V.) The Decree further provides for notice and appeal procedures for any determinations made by the EPA or the Hearing Officer. (See Consent Decree § VII.) In December 2009, George Stamboulidis of Baker & Hostetler was appointed as the EPA and Steven C. Bennett was appointed as the Hearing Officer. (See Docket No. 11.)

In February 2010, the EPA mailed notices ("Advisory Notices") to previously convicted members of the Union advising them of potential disciplinary charges based on the acts which formed the basis for their convictions. (See, e.g., Declaration of Robert J. La Reddola for Interested Parties William Duffy, Gene Panessa, and James Mascarella in Opposition Ex. 8; Memorandum of Law of Interested Party Stephen Santucci in Opposition ("Santucci Opp. Mem.") Ex. F.; Letter Brief of Vincent Martinelli for Interested Party Richard Troy Ex. 1.) In the Advisory Notices, the EPA invited the convicted members to advocate as to why charges should not be filed against them. (See id.; see also Transcript of Oral Argument, Nov. 9, 2010 ("Tr."), at 26–27.) During meetings with the EPA, several convicted members raised legal and equitable issues regarding the retroactivity of the Consent Decree's anti-corruption provisions.

In July 2010, the EPA filed the instant Motion to Enforce Judgment ("the Petition"). (See Docket No. 14.) The Government also filed a memorandum of law in support of the Petition. (See Docket No. 60.) Twelve current members and

former officers of the Union who were convicted in the criminal RICO actions (collectively, "Interested Parties") entered appearances and filed opposition to the Petition.[2] This Court heard oral argument on November 9, 2010.

**DISCUSSION**

The EPA raises three arguments in support of enforcement: (1) application to the Court for enforcement of the Consent Decree is proper; (2) the Consent Decree's anti-corruption provisions apply retroactively to conduct that predates the Consent Decree; and (3) the Interested Parties have been afforded appropriate due process considerations. Each will be examined in turn.

**A. The Court's Jurisdiction to Decide the Petition**

The EPA's first argument is not controversial. "While consent decrees should be construed basically as contracts between the litigants, few persons are in a better position to understand the meaning of a consent decree than the district judge who oversaw and approved it." United States v. Local 359, United Seafood Workers, 55 F.3d 64, 68 (2d Cir. 1995). Because a consent decree is an order of the

[2] Opposition was filed by: Lawrence Persico and Anthony Carollo, Jr. (Docket Nos. 32–34); William Duffy, Gene Panessa, and James Mascarella (Docket Nos. 39, 41); Stephen Santucci (Docket Nos. 40, 51); Richard Troy (Docket No. 42); Steven Skinner (Docket Nos. 37–38); Anthony Licata and William Scotto (Docket No. 52); and Francis Gray (Docket No. 46). Nicholas Lupari, also an Interested Party, filed a letter Motion to Dismiss for Lack of Jurisdiction (Docket No. 50) adopting part of the opposition arguments presented by Interested Parties Persico and Carollo. Each party adopted the others' arguments and, in some instances, argued opposition specific to their circumstances.

Interested Parties Duffy, Mascarella, and Panessa collectively filed a separate civil action against the Union, the EPA, and other defendants requesting injunctive relief to stay enforcement of the Consent Decree and to stay license suspension proceedings instituted by the New York City Department of Buildings. See Duffy, et al. v. International Union of Operating Engineers Local 14-14B, et al., No. 10-CV-3111 (E.D.N.Y.) (SJ).

court, it "vests the court with equitable discretion to enforce the obligations imposed on the parties." Id. at 69. "The Court's interest in protecting the integrity of such a decree justifies any reasonable action taken by the court to secure compliance." Id. "[T]hough a court cannot randomly expand or contract the terms agreed upon in a consent decree, judicial discretion in flexing its supervisory and enforcement muscles is broad." EEOC v. Local 580, International Association of Bridge, Structural and Ornamental Ironworkers, 925 F.2d 588, 593 (2d Cir. 1991). In Local 580, the Second Circuit upheld a jurisdictional clause which provided that "at any time, any of the parties . . . may apply to the court for the purpose of seeking additional orders to insure the full and effective implementation of the terms and intent of this judgment . . . ." Id. In this case, the Consent Decree includes a similarly worded clause that reads, in relevant part:

> Each party shall be able to petition the District Court at any time during this proceeding, upon notice to other parties, for clarification, modification, amendment, or enforcement of any of the terms of this Consent Decree, or for such other assistance as may be necessary and appropriate to implement the intent of this Consent Decree.

Consent Decree § XIX. Accordingly, the Petition is properly before the Court.

**B. Retroactive Application of the Consent Decree**[3]

Next, the EPA argues that the Consent Decree's anti-corruption provisions apply retroactively to conduct that predates the Consent Decree. "Consent decrees are 'entered into by parties to a case after careful negotiation has produced

[3] The Petition specifically describes the EPA's authority to act. At oral argument, however, the movants requested that the Court rule on the Hearing Officer's authority as well. (See Tr. 46–47.) The Court notes that the authority to act extends both to the EPA and to the Hearing Officer. (See Consent Decree §§ IV–V.)



P-049

agreement on their precise terms.'" United States v. International Brotherhood of Teamsters, 998 F.2d 1101, 1106 (2d Cir. 1993) (quoting United States v. Armour & Co., 402 U.S. 673, 681–82 (1971)). While "the scope of a consent decree must be discerned within its four corners," the Court also may consider normal aids to construction such as "'the circumstances surrounding the formation of the consent order, any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree.'" Teamsters, 998 F.2d at 1106 (quoting United States v. ITT Cont'l Baking Co., 420 U.S. 223, 238 (1975)).

1. The Consent Decree's Express Terms

The Court finds that the Consent Decree in this case, by its express terms, was intended to apply retroactively to corrupt conduct that predates its approval. The most instructive evidence is in the Consent Decree's "Whereas" clauses, which "indicate the parties' intent." United States v. ILA Local 1588, 77 F. App'x 542, 546 (2d Cir. 2003) (unpublished) (citing Foufas v. Dru, 319 F.3d 284, 287 (7th Cir. 2003)). Here, the "Whereas" clauses expressly refer to the organized crime influence within Local 14; note the additional steps necessary to ensure that the potential for corrupt influence is eliminated; and conclude that the Consent Decree was entered into to eradicate corruption and organized crime influence within Local 14. (See Consent Decree 1–3.) The Consent Decree further provides that: (1) Local 14 delegates authority to the EPA and the Hearing Officer to conduct disciplinary proceedings and take disciplinary action; and (2) their authority includes "the full extent of authority that Local 14 has under the IUOE Constitution and Local 14's

By-laws," including the authority that Local 14 has to discipline members for "conduct constituting corruption" as defined in the Consent Decree. (See Consent Decree at 3 (twelfth "Whereas" clause).) In turn, Article XXIV(7)(e) of the 2008 version of the IUOE Constitution provides, in relevant part, that

> Any officer of member of a Local Union . . . who commits an offense discreditable to the International Union or its subdivisions; . . . . who fraudulently receives, misapplies, converts or embezzles the funds of any subdivision of the International Union . . . ; [or] who violates his obligation to any section of the Constitution, Rules, Edicts and Ritual of the International Union . . . may be disciplined or, upon trial therefor and conviction thereof, be fined, suspended or expelled from his Local Union.

(Stamboulidis Decl. Ex. 2 at 93–94.) Similar language is included in the 1993, 1998, and 2003 versions of the IUOE Constitution. (See Stamboulidis Decl. Ex. 2.) Thus, when the Consent Decree was negotiated between the Government and Local 14, the Union already had the power to discipline and potentially expel members who engaged in corrupt practices. The Consent Decree expressly delegates the Union's existing power to bring disciplinary charges to the EPA and the Union's existing power to impose sanctions to the Hearing Officer.

Similarly, the provisions detailing the EPA's and Hearing Officer's respective duties and powers support retroactive application of the Decree's anti-corruption provisions. Specifically, the EPA may: (1) commence disciplinary proceedings against any member of the Union who "has engaged" in corruption (see Consent Decree § IV(B)(6)(b)); (2) take actions "necessary to eradicate Corruption, abuse and the influence of organized criminal groups on Local 14," and "exercise all

disciplinary powers available to Local 14 and its Executive Board . . . ." (Consent Decree § IV(B)(6)(d)–(e)); and (3) seek recovery of misappropriated Union assets "whether the underlying conduct occurred prior to or subsequent to" the Consent Decree (see Consent Decree § IV(B)(8)). Likewise, the Hearing Officer may "exercise the powers of Local 14 and its Executive Board to conduct disciplinary proceedings as against members of Local 14, the IUOE or any IUOE local that has engaged in Corruption concerning Local 14 . . . ." (Consent Decree § V(B)(1)(d).)

The Court is not convinced by the Interested Parties' arguments in opposition. The Interested Parties argue that Article XXIV(7)(m) of the IUOE Constitution requires disciplinary charges to be filed within thirty days of any prohibited conduct. (See Memorandum of Law of Interested Parties William Duffy, Gene Panessa, and James Mascarella in Opposition ("Duffy et al. Opp. Mem.") 8–10.) But the Consent Decree provides that its terms supersede any contrary terms of the IUOE Constitution, and its terms provide for no such limitations on filing disciplinary charges. (See Consent Decree § XIII(D).)

The Interested Parties also argue that the Consent Decree's provisions only apply to future actions. (See, e.g., Duffy et al. Opp. Mem. 4–5 (citing Consent Decree § XX (referring to the Union's practices "now and in the future"))). This argument has no merit because it ignores the expressly stated purpose of the Consent Decree to eliminate corrupt influences and practices within Local 14. (See Consent Decree at 2 (eleventh "Whereas" clause).) Moreover, courts have rejected the "time limitation" argument in similar RICO cases. See United States v.

International Brotherhood of Teamsters, 745 F. Supp. 908, 913–14, 918 (S.D.N.Y. 1990), aff'd, 941 F.2d 1292, 1297 (2d Cir. 1991) ("There is no fundamental unfairness from being charged in 1990 for conduct [in violation of the 1989 Consent Decree] that occurred in 1981 and 1982.")

2. The Circumstances Surrounding the Formation of the Consent Decree

The Court further finds that the "circumstances surrounding the formation of the consent order" support a finding of retroactive application. Teamsters, 998 F.2d at 1106. The Consent Decree resolved a RICO case in which the United States alleged that the Union had been infiltrated, controlled, influenced, and corrupted by organized crime. (See Compl. ¶¶ 1–3.) As such, the Consent Decree specifically refers to the corruption, the labor racketeering convictions of Local 14 members, and the entry of the Consent Decree "in order to eradicate Corruption . . . and any organized crime influence within Local 14 . . . ." (Consent Decree at 2 (eleventh "Whereas" clause).) "Such intervention . . . may be essential where a significant pattern of racketeering is found which threatens or stymies self-government in the labor movement." United States v. Local 6A, Cement and Concrete Workers, 832 F. Supp. 674, 678 (S.D.N.Y. 1993). In this case, the appointment of the EPA and the Hearing Officer to effectuate disciplinary proceedings against Union members engaged in corruption further supports the Consent Decree's goals and RICO's civil remedy provisions.

The Interested Parties insist that the Petition requests an improper modification of the Consent Decree to effect an expansion of the EPA's authority. (See Letter Brief of Lawrence Persico and Anthony Carollo, Jr. ("Persico/Carollo Br.") 4–5; Duffy et al. Opp. Mem. 13–17.) The Court disagrees because, as noted, the plain text of the Consent Decree provides for retroactive application of the anti-corruption provisions and such application is fully within the EPA's and the Hearing Officer's authority.

Even if the Petition were requesting a modification to permit retroactive application, the proposed change would be entirely consistent with the Consent Decree's purpose. Courts apply a flexible standard in determining when modification is appropriate, and focus on the "dominant objective of the decree." Patterson v. Newspaper & Mail Deliverers' Union, 13 F.3d 33, 38–39 (2d Cir. 1993). The Court must ensure that the proposed modification is consistent with the purpose of the Consent Decree. United States v. District Council, 571 F. Supp. 2d 555, 557 (S.D.N.Y. 2008). Here, the "dominant objective" of the Consent Decree is not to eradicate the influence of merely the Columbo and Genovese crime families in the construction industry, but of all organized crime within Local 14. (See Consent Decree at 2 (eleventh "Whereas" clause).) The conduct underlying the criminal RICO convictions is the impetus for the Consent Decree, and the purpose of eliminating corrupt influence would be frustrated if the Consent Decree's terms did not reach that conduct. Therefore, "[i]t is unreasonable to conclude that the spirit and intent of the Consent Decree . . . should in any way preclude the [EPA]

from pursuing charges against convicted felons." See United States v. International Brotherhood of Teamsters, 725 F. Supp. 162, 166 (S.D.N.Y. 1989), aff'd, 905 F. 2d 610 (2d Cir. 1990). The Court therefore rejects the argument that the Petition requests an improper modification of the Consent Decree.

Finally, the Interested Parties argue that they did not intend the decree to apply retroactively. The Court does not agree. The Consent Decree was negotiated between the Government and Local 14, of which each Interested Party is a member. (See Stamboulidis Decl. Ex. 1 (Minutes of Local 14 Regular Meeting, June 12, 2008)). When the Decree was negotiated between the Government and the Union, the Union represented all its members, including the Interested Parties. See Teamsters, 725 F. Supp. at 164–65.

Based on the foregoing, the Court finds that retroactive application of the anti-corruption provisions of the Consent Decree is not only permissible, but also necessary to implement the Consent Decree's intent.[4]

**C. Due Process Principles**

Finally, the EPA argues that retroactive application of the Consent Decree's anti-corruption provisions does not violate traditional principles of injunctive relief and due process. The Court agrees.

---

[4] Interested Parties Steven Skinner and Francis Gray argue that they did not engage in the conduct contemplated by the Consent Decree because they cooperated with the Government's criminal RICO investigation. (See Tr. 14–25.) They ask the Court to carve out an exception for cooperators. (Id.) But the Consent Decree empowers the EPA to bring disciplinary charges against any members who engage in corruption, whether they subsequently cooperated in an investigation. (See Consent Decree § IV.) If the EPA brings charges against Interested Parties Skinner and Gray, or any other Local 14 member, they will have the opportunity to present mitigation arguments before the Hearing Officer. (See Consent Decree § V; Tr. 27–30.)

The Consent Decree enjoins Local 14's members from corruption as defined therein. (See Consent Decree § III.) While injunctive relief is generally inappropriate to punish past behavior, the injunction in this case is "part of a Consent Decree negotiated and agreed to by the [Local 14] on behalf of its . . . members and, as such, [is] not subject to traditional limitations on [its] use." Investigations Officer v. Lanza, No. 94 Civ. 6487, 1996 WL 514871, at *11 (S.D.N.Y. Sept. 10, 1996). Therefore, actions taken by the EPA and the Hearing Officer to enforce the Consent Decree do not violate traditional rules regarding prospective use of injunctive remedies.

In addition, the Due Process Clause of the United States Constitution is not applicable to the EPA's or the Hearing Officer's actions because neither is a state actor. "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" United States v. Mason Tenders District Council, No. 94-6487, 1997 WL 340993, at *6 (S.D.N.Y. June 20, 1997) (citing Teamsters, 941 F.2d at 1295). "It is well-settled that the actions of an officer appointed by a federal district court to oversee the implementation of a union consent decree do not constitute 'state action' for constitutional purposes." Mason Tenders, 1997 WL 340993, at *6. Pursuant to the Consent Decree, the EPA and the Hearing Officer were appointed by this Court, are compensated by Local 14, and act pursuant to the powers granted by the Consent

Decree, a private agreement. (See Consent Decree §§ IV–V.) Accordingly, state action is notably absent. See Mason Tenders, 1997 WL 340993, at *6.

Even if there was state action, the Consent Decree's terms provide ample due process and appellate procedures for members against whom disciplinary proceedings are instituted, including: (1) written notice by the EPA regarding a disciplinary decision; (2) hearings before the Hearing Officer to present evidence in support of or opposition to the EPA's decision, and the right to representation at the hearings; and (3) the right to appeal any decision by the Hearing Officer to this Court. (See Consent Decree §§ VII–VIII.)

Several Interested Parties also argue that retroactive enforcement of the Consent Decree will violate New York State laws prohibiting discrimination against individuals with prior criminal convictions, thereby denying them due process. (See Duffy et al. Opp. Mem. 17–20; Persico/Carollo Br. 5–8; Santucci Opp. Mem. 6–8; Letter Brief of Nicholas Lupari 1.)[5] This argument incorrectly applies the relevant statutes to the facts of this case. The New York State Human Rights Law and the New York Correction Law, in relevant part, prohibit the denial of or adverse action against a license or employment of any individual because of his or her criminal convictions. See N.Y. EXEC. L. § 296(15) (McKinney 2003); N.Y. CORRECT. L. § 752 (McKinney 2003). In contrast, the EPA's and Hearing Officer's actions would be based on conduct which fits the definition of corruption as stated in the Consent

[5] Interested Parties Duffy, Mascarella, and Panessa make similar arguments in their independent civil action requesting injunctive relief against the EPA. See Duffy, et al. v. International Union of Operating Engineers Local 14-14B, et al., No. 10-CV-3111 (E.D.N.Y.).

Decree—e.g., engaging in conduct which constitutes or furthers acts of racketeering or knowingly assisting members or associates of organized criminal groups to gain control or influence over Local 14's affairs. (See Consent Decree § II.C.) That some members have already been convicted for improper union-related activity is of no moment. The EPA may bring disciplinary proceedings against any Local 14 member—including the members already convicted—based on their racketeering activity.

Further, under both statutes, a license or employment may be denied if "there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual." N.Y. CORRECT. L. § 752(1); see also Bonacorsa v. Van Lindt, 71 N.Y.2d 605, 611 (1988). A "direct relationship" means that "the nature of criminal conduct for which the person was convicted has a direct bearing on his fitness or ability to perform one or more of the duties or responsibilities necessarily related to the license, opportunity, or job in question." N.Y. CORRECT. L. § 750(3). In Bonacorsa, a harness race horse owner and driver was properly denied a license, according to the New York Court of Appeals, because his prior conviction for conspiracy to fix horse races was directly related to the horse racing license for which he applied subsequent to the conviction. 71 N.Y.2d at 614–15. Here, the improper conduct for which the EPA may bring disciplinary charges directly relates to Local 14's operations and membership and thus falls squarely within the statutory exception.

Accordingly, the Court finds that the EPA's enforcement of the Consent Decree's anti-corruption provisions does not violate the affected members' due process rights.

## CONCLUSION

For all the foregoing reasons, the EPA's motion to enforce the Petition is GRANTED.[6]

**SO ORDERED.**

Dated: January 24, 2011
Brooklyn, NY

s/b Judge Johnson

STERLING JOHNSON, JR.
Senior United States District Judge

[6] Additionally, Interested Party Lupari's letter motion to dismiss the Petition (Docket No. 50), adopting the arguments of Interested Parties Persico and Carollo, is DENIED for the reasons stated in this Order.



P-049